**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ABDUL KADIR,** | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 3:16-1814** |
| **v.** | : | |
| | | **(JUDGE MANNION)** |
| **C. MAIORANA, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

## I.    Background

Plaintiff, Abdul Kadir, an inmate confined in the United States Penitentiary ("USP-Canaan"), Waymart, Pennsylvania, filed the above captioned action pursuant to 28 U.S.C. §1331 and Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971). (Doc. 1, complaint). Plaintiff challenges a misconduct he received for violation of possession of narcotics, a Code 113 violation. Id. Specifically, Kadir disputes the evidentiary basis for the Discipline Hearing Officer's decision and claims that he was improperly charged because the index cards were not referred to an outside lab for testing. Id. The named Defendants are the following present and former employees of USP-Canaan: Warden C. Maiorana, Associate Warden Gilley, Lieutenant M. Miller, Lieutenant C. Weaver, Unit Manager T. Johnson and Discipline Hearing Officer (DHO) M. Renda. Id.

Presently before the Court is Defendants' motion to dismiss and/or for

summary judgment. (Doc. 22). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, Defendant's motion for summary judgment will be granted.

## II. **Standards of Review**

### A. **Bivens Standard**

Plaintiff's claims are filed pursuant to 28 U.S.C. §1331, in accordance with Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, (1971). Under Bivens, the District Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor. Bivens, supra. Pursuant to Bivens, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978). A Bivens-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. §1983 and the same legal principles have been held to apply. See, Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F.Supp. 1486, 1492 (M.D.Pa. 1992); Young v. Keohane, 809 F.Supp. 1185, 1200 n. 16 (M.D.Pa. 1992). In order to state an

actionable <u>Bivens</u> claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. <u>See</u> West v. Atkins, 487 U.S. 42, 48 (1988); Young v. Keohane, 809 F.Supp. 1185, 1199 (M.D.Pa. 1992).

### B. <u>Summary Judgment</u>

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); <u>see also</u> Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of

Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed.R.Civ.P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U .S.

at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir.1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. Fed.R.Civ.P. 56(e).

## III.   **Statement of Facts**[1]

On March 10, 2016, Kadir was issued Incident Report No. 2825475 for Possession of any Narcotics, Marijuana, Drugs, Alcohol, Intoxicants, or related paraphernalia not prescribed for the individual by the medical staff, a code 113 violation. (Doc. 26-1 at 26).

---

[1]Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall included a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] ..., as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. LR 56. 1. The rule further states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Because Plaintiff has failed to file a separate statement of material facts controverting the statement filed by Defendant, all material facts set forth in Defendant's statement (Doc. 26) will be deemed admitted.

Specifically, Incident Report No. 2825475, which was delivered to Kadir on March 10, 2016 at 2:00 p.m., states the following:

> On 3/10/2016 at approximately 9:50 a.m., I conducted a random search of cell 113 housed by Inmate Kadir, Abdul 64656-053, searched yielded 5 index cards that appeared to be soaked in something. 4 white index cards and 1 larger gray card, all placed in a religious book on top of Inmate Kadir's desk. Inmate Kadir is housed alone in cell 113. I retrieved them out of the religious book and gave the cards to S.I.S. M. Haydock. The contraband was delivered to the SIS Department for testing and the suspected substance tested positive for Amphetamine using both NIK test kits A and U.

 (Doc. 26-1 at 26).

On March 11, 2016, Kadir appeared before the Unit Discipline Committee ("UDC"). (See Doc. 26-1 at 28). Due to the severity of the offense, the UDC referred the charge to the Disciplinary Hearing Officer ("DHO") for further hearing and further advised that if found guilty, to apply the "appropriate sanctions at that level should the inmate be found to have committed the prohibited act" Id. During the UDC hearing, staff member, T. Baux, informed Kadir of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. Id. Kadir refused to sign the form. Id.

Also on March 11, 2016, Kadir was provided with a "Notice of Discipline Hearing before the (DHO)" form, which he also refused to sign. Id. Kadir

requested to have a staff representative appointed to represent him, and he chose not to call any witnesses. Id.

On March 17, 2016, Kadir appeared for a hearing before DHO Marc A. Renda. (Doc. 52-1 at 21-25). During the DHO hearing, Plaintiff was again read his rights, and he indicated that he understood them. Id. The DHO confirmed that Kadir received a copy of the incident report. Id.

During the DHO hearing, Kadir made the following statement on his behalf:

> I am sixty-four years old. I have never in my entire life used any drugs or narcotics. I never sold narcotics. I never had anything to do with narcotics my entire life. Before that I secured library index cards. I was keeping them in my locker. They obviously got wet when the wall was sweating during the winter. I threw away some cards and I kept a few. I used them as bookmarks and to write notes. On the day in question we had a shakedown."

> When further interrogatories were posed by the DHO specific to the index cards as presented in photographic evidence KADIR stated "They could be mine. Yes, I had similar cards in my property.", alleged he obtained the index cards from another inmate "over two years ago.", testified "There are different chemicals, salts, chlorine.", and testified "I studied chemical engineering as a child.' I've been locked up since 2007. I have never had any infractions."

> No procedural issues were cited nor was documentary evidence provided for consideration to the DHO.

(See Doc. 26-1 at 22).

7

After considering the incident report, investigation for report, March 10, 2016 Memorandum from M. Haydock, SIS Technician, seven (7) photographs depicting five index cards and NIK Test Kit A and U, the DHO determined that Kadir committed the prohibited act of Possession of Any Narcotics, Marijuana, Drugs, Alcohol, Intoxicants, or Related Paraphernalia, Not Prescribed for the Individual by the Medical Staff, a 113 code violation. Kadir was advised of his appeal rights at the conclusion of the hearing. Id.

Plaintiff states that he received a copy of the DHO Report on May 18, 2016, while housed in the Special Housing Unit, and that he delivered an envelope containing his appeal to the officer on duty for Lower A Unit at approximately 8:00 p.m. on March 22, 2016. (Doc. 1). Kadir states that after his release from the SHU, he learned from his Counselor, on April 20, 2016, that there was no record that his appeal had been submitted. Id.

On April 25, 2016, Kadir submitted Administrative Remedy No. 859895-F1 at the institution level, stating that he "wants to appeal drug shot." (Doc. 26-1 at 17). The same day, the BOP rejected Remedy No. 859895-F1, using codes "UTF FRM", because his request was untimely ("UTF") and because he did not submit his request or appeal on the proper form ("FRM"). Id.

On April 27, 2016, Kadir submitted Administrative Remedy No. 860340-

R1, appealing the DHO decision in Incident Report No. 2825475 to the Northeast Regional Office. (Doc. 26-1 at 18). On April 28, 2016, the Northeast Regional Office rejected Kadir's appeal, stating "Your appeal was due at the Regional Office by 04-07-2016. It was received on 04-27-2016." Id. The Regional Office informed Kadir that he could resubmit his administrative remedy within ten days of the date of the rejection notice with staff verification stating the reason for his untimely filing was not his fault. Id.

On May 5, 2016, Kadir filed Administrative Remedy No. 860340-R2, appealing the DHO decision in Incident Report No. 2825475 to the Northeast Regional Office. Id. On May 9, 2016, the Northeast Regional Officer, rejected Kadir's appeal, stating "Your appeal was due at the Regional Office by 04-07-2016. It was first received on 04-27-2016. You did not send a staff memo."

On June 15, 2016, Kadir filed Administrative Remedy 860340-A1 with the Central Office, appealing Incident Report No. 2825475. (Doc. 26-1 at 19). On July 11, 2016, the Central Office rejected Administrative Remedy 860656-A1, informing Kadir, "If staff provide a memo stating the late filing was not your fault, the[n] re-submit to the level of the original rejection." Id.

In addition to Kadir's appeal of the DHO hearing, on May 12, 2016, Kadir filed Administrative Remedy No. 862054-F1 at the institution level,

alleging mail was taken from his cell door on the night of March 22, 2016, at approximately 8:00 p.m., when mail was picked up from the cell doors. (Doc. 1 at 28).

By Response dated June 7, 2016, Warden Maiorana denied Administrative Remedy No. 862054-F1, with the following:

> Your request for Administrative Remedy was received in this office on May 12, 2016. In your request for Administrative Remedy you request a memo stating that a sealed enveloped marked "legal mail" addressed to the Northeast Regional Office was collected from your cell on March 22, 2016 in the Special Housing Unit.
>
> All Special Housing Unit mail is picked up by SHU staff, processed, placed in a mail bag, and delivered to the mail room. All incoming legal mail is documented by the mail room staff upon being received, therefore you do not need a memo saying as such.
>
> For these reasons, your Request for Administrative Remedy is denied. In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of the date of this response by submitting a BP-230(10) to the Regional Director, Federal Bureau of Prisons, Northeast Regional Office, U.S. Customs House, 2nd and Chestnut Street, Philadelphia, PA 19106.

(Doc. 1 at 27). Instead of appealing the Warden's decision to the Regional Director as stated in the Warden's response, Kadir filed an appeal to the Central Office on June 29, 2016, which was rejected on July 19, 2016, stating the remedy was not submitted on the proper form, and that Kadir submitted

the remedy to the wrong level, as he was instructed by the Warden that any appeal should be taken to the Northeast Regional Officer, the next level of review. (Doc. 1 at 25). The record reveals, and Plaintiff concedes, that no further appeal, administrative remedy, or habeas corpus action was filed, challenging Incident Report No. 2825475.

## IV.    Discussion

### A.  Exhaustion

Defendants contend that Kadir's complaint should be dismissed for his failure to exhaust available administrative. In pertinent part, the Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).

Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law.  See 42 U.S.C. §1997e(a); Woodford v. Ngo, 548 U.S. 81 (2006). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,

and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000). The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford, 548 at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).

A prisoner does not have to allege in his complaint that he has exhausted administrative remedies. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002). Failure to exhaust available administrative remedies is an affirmative defense. Id. As such, it must be pleaded and proven by the Defendants. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002). Defendants have properly raised the matter of exhaustion of administrative remedies made available to inmates confined within the Bureau of Prisons ("BOP").

"The Bureau of Prisons has established an Administrative Remedy Procedure through which an inmate may seek formal review of a complaint which relates to any aspect of his imprisonment if less formal procedures have not resolved the matter. This procedure applies to all inmates confined in Bureau of Prisons institutions. . . ." 28 C.F.R. §542.10. Inmates are to informally present their complaints to the staff and the staff is to attempt to resolve the matter. 28 C.F.R. §542.13(a). If informal resolution is unsuccessful, the inmate is then to execute the appropriate form to bring the matter to the attention of the warden. 28 C.F.R. §542.14(b). The warden is then to respond to the inmate's complaint within twenty (20) days. Id. at §542.18. If an inmate is dissatisfied with the warden's response, he may then appeal to the Regional Director. Id. at §542.15. If the response of the Regional Director is not satisfactory, the inmate may then appeal to the Central Office of the Federal Bureau of Prisons, which office is the final administrative appeal in the Bureau of Prisons. Id.

The record reveals that, although Plaintiff began the administrative remedy process, he failed to complete it. Plaintiff attempted to appeal the DHO decision regarding Incident Report No. 2825475. However, his submission was rejected as untimely and he was given an opportunity to

overcome the untimeliness with a memo from staff indicating that Plaintiff was not at fault for the late filing. In an attempt to obtain such memorandum, Plaintiff filed Administrative Remedy No. 862054-F1, arguing that he submitted an appeal of Incident Report No. 2825475 on March 22, 2016 and it disappeared. Although the Warden denied Administrative Remedy 862054-F1 on June 7, 2016, he provided Kadir with instructions that if he wished to appeal that decision, he could send his appeal to the Regional Office. Plaintiff, however, filed an appeal to the Central Office, and then made no further attempt to properly complete the process, so that he may return to pursuing his appeal of Incident Report No. 2825475. Thus, it is evident that Plaintiff failed to follow the procedural requirements of the BOP. Failure to employ the system of administrative remedies, even if the administrative process would be inadequate to grant full relief, procedurally defaults any federal claim. See Spruill v. Gillis, 372 F.3d 218, 222-26 (3d Cir. 2004). Kadir's failure to pursue the appropriate administrative process with respect to his claims precludes the litigation of such claims.

In Spruill, supra, our Court of Appeals held that congressional policy objectives were best served by interpreting the statutory "exhaustion requirement to include a procedural default component." The court further

ruled that procedural default under §1997e(a) is governed by the applicable prison grievance system, provided that the "prison grievance system's procedural requirements [are] not imposed in a way that offends the Federal Constitution or the federal policy embodied in §1997e(a)." Id. at 231, 232.

In this case, the record clearly discloses that Kadir failed to exhaust his administrative remedies with respect to his missing legal mail, allegedly containing his appeal, or the appeal of his Code 113 violation. Thus, Kadir has sustained a procedural default with respect to these claims.

Spruill cited with approval the Seventh Circuit decision in Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). Spruill, 372 F.3d at 231. In Pozo, the Seventh Circuit ruled that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025 (emphasis added). Turner offers no evidence to justify his failure comply with BOP requirements. Consequently, he is now foreclosed from litigating his remaining claims in this Court.

In Spruill, the Third Circuit found that a procedural default component to the exhaustion requirement served the following congressional objectives: "(1) to return control of the inmate grievance process to prison administrators;

(2) to encourage development of administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." 372 F.3d at 230. In Pusey v. Belanger, No. Civ. 02-351, 2004 WL 2075472 at *2-3 (D. Del. Sept. 14, 2004), the court applied Spruill to dismiss an inmate's action for failure to timely pursue an administrative remedy over the inmate's objection that he did not believe the administrative remedy program operating in Delaware covered his grievance. In Berry v. Kerik, 366 F.3d 85, 86-88 (2d Cir. 2004), the court affirmed the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate justification for the failure to timely pursue administrative grievances. In Ross v. County of Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004), the court embraced the holding in Pozo, stating that "[a] prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted." These precedents support this Court's decision to enter judgment in favor of Defendants.

### B. Claims Based on Disciplinary Proceedings

The sanctions levied against Kadir during his disciplinary hearing, were all imposed as a result of prison misconduct. The Court finds that any Fifth

Amendment due process claim regarding his disciplinary rehearing is barred

under Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520

U.S. 641 (1997).[2] Under some circumstances, a prisoner may bring a Bivens

claim for monetary damages based on the denial of due process during a

prison disciplinary hearing. See Wolff v. McDonnell, 418 U.S. 539, 554 (1974)

(stating that plaintiff's §1983 "damages claim was ... properly before the

District Court and required determination of the validity of the procedures

employed for imposing sanctions, including loss of good time, for flagrant or

serious misconduct"). However, such due process claims cannot be brought

in a Bivens action where the claims "necessarily imply the invalidity of the

punishment imposed" unless the plaintiff shows that the sanctions have been

overturned. See Balisok[3], 520 U.S. at 648 (finding claims for declaratory and

---

[2]While Heck, and Balisok all involved §1983 cases, courts have extended their holdings to Bivens actions. See Lora-Pena v. F.B.I., 529 F.3d 503, 506 n. 2 (3d Cir. 2008) ("Although Heck involved a §1983 action by a state prisoner, the reasoning in Heck has been applied to bar Bivens claims" (citing Williams v. Hill, 74 F.3d 1339, 1341 (D.C. Cir.1996) (per curiam)).

[3]In Edwards v. Balisok, the Supreme Court applied the lessons of Heck to a state prisoner action, seeking compensatory and punitive damages, challenging the constitutionality of procedures used in a prison disciplinary proceeding that resulted in the loss of good-time credits, but not necessarily challenging the result and not seeking the restoration of the good-time credits. Again, the Court emphasized that such a claim is not cognizable under §1983 if a favorable outcome would necessarily imply the invalidity of the challenged
(continued...)

17

monetary relief based on allegations that plaintiff was denied opportunity to present a defense and that hearing officer was biased could not be brought pursuant to §1983); Heck, 512 U .S. at 486-87 ("We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254."). As the record before us demonstrates, the charges and sanctions stemming from March 10, 2016 remain valid on Plaintiff's disciplinary record.

**C. Personal Involvement**

To state a claim under Bivens, Plaintiff must allege that he was deprived of a federal right by a person who was acting under color of federal law. See Young v. Keohane, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992); West v. Atkins, 487 U.S. 42, 48, (1988).

---

[3](...continued)
judgment, there the disciplinary finding and punishment. 520 U.S. at 646-8.

It is well established that personal liability in a civil rights action cannot be imposed upon a state official based on a theory of *respondeat superior*. See, e.g., Rizzo v. Goode, 423 U.S. 362 (1976). It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. Sutton v. Rasheed, 323 F.3d 236, 249–250 (3d Cir.2003). Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. Id. As the Court stated in Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs.... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

There is no evidence of record that Defendants Warden C. Maiorana, Associate Warden Gilley, Lieutenant M. Miller, Lieutenant C. Weaver[4], or Unit

---

[4]To the extent Kadir is attempting to advance a due process violation against Defendant Weaver because he signed the Administrative Detention Order to place Kadir in the Special Housing Unit (SHU) pending investigation of the incident report, a federal inmate's brief stint in the SHU pending investigation of an incident report did not violate due process or impose an "atypical and significant hardship on [him] in relation to the ordinary incidents
(continued...)

Manager T. Johnson were involved in the issuance of Incident Report No. 2825475, or the disciplinary hearing that followed. Consequently, these Defendants had no personal involvement in addressing Plaintiff's incident report. See Sutton, 323 F.3d at 249 (finding that personal involvement or some affirmative action on the part of a defendant is necessary before he or she may be found liable for a civil rights violation).

Moreover, aside from naming Associate Warden Gilley in the caption of the complaint, there are no allegations in the body of the complaint against this Defendant. There is no evidence of record that this Defendant was personally involved in any of the alleged incidents of constitutional deprivation. Thus, it is apparent that Plaintiff is attempting to impose liability on the basis of *respondeat superior*.

Lastly, Plaintiff's allegations that Defendants Warden Maiorana, Lieutenant M. Miller, Lieutenant C. Weaver, and Unit Manager T. Johnson violated his constitutional rights by ostensibly being aware of the proceeding or simply being a member of his unit team, fare no better. Allegations that prison officials and administrators responded inappropriately, or failed to respond to a prisoner's complaint or an official grievance, does not establish

---

[4](...continued)
of prison life." See Sandin v. Conner, 515 U.S. 472, 484 (1995).

that the officials and administrators were involved in the underlying allegedly unconstitutional conduct. See Rode, 845 F.2d at 1207-08 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); Brooks v. Beard, 167 Fed.Appx. 923, 925 (3d Cir. 2006) ((holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).

## V.    Conclusion

Based upon the undisputed facts of record, Defendants are entitled to summary judgment with respect to Plaintiff's challenge to his misconduct rehearing. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: August 22, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-1814-01.wpd